1  Michael Louis Kelly – SBN 82063
   mlk@kirtlandpackard.com
2  Behram V. Parekh – SBN 180361
   bvp@kirtlandpackard.com
3  Heather M. Peterson – SBN 261303
   hmp@kirtlandpackard.com
4
5  KIRTLAND & PACKARD LLP
   2361 Rosecrans Avenue, Fourth Floor
6  El Segundo, CA 90245
7  Tel: (310) 536-1000
   Fax: (310) 536-1001
8
9  [Additional Counsel on Signature Page]

10  *Counsel for Plaintiff Nathaniel
    Schwartz, on behalf of himself and
11  for all others similarly situated*

12

13

14          **UNITED STATES DISTRICT COURT FOR THE**
15              **CENTRAL DISTRICT OF CALIFORNIA**

16  NATHANIEL SCHWARTZ, on behalf of      Case No.  **CV11-01712** GHK(JCGx)
    himself and all others similarly situated,
17                                               **CLASS ACTION**
18                    Plaintiff,                 **BY FAX**
          vs.                                    COMPLAINT FOR:
19
    LIGHTS OF AMERICA, INC., a              1.  **VIOLATION OF THE FALSE
20  California Corporation, and DOES 1-10,      ADVERTISING ACT
                                                (BUSINESS AND
21                    Defendants.                PROFESSIONS CODE §17500
                                                *et seq.*);
22
                                             2.  **VIOLATION OF THE UNFAIR
23                                               COMPETITION LAW
                                                (BUSINESS AND
24                                               PROFESSIONS CODE §17200
                                                *et seq.*); and
25
                                             3.  **VIOLATION OF THE
26                                               CONSUMER LEGAL
                                                REMEDIES ACT (CIVIL
27                                               CODE §1750 *et seq.*).
28                                               **JURY TRIAL DEMANDED**

---

1

**CLASS ACTION COMPLAINT**

Plaintiff Nathaniel Schwartz ("Plaintiff"), acting on behalf of himself and all other persons who purchased Defendant's Light Emitting Diode ("LED") products during the relevant time frame, alleges as follows:  Plaintiff's allegations are based on the investigation of counsel, including but not limited to reviews of advertising and marketing material, public filings, articles, judicial actions, and other publicly available information, and thus, on information and belief, except as to the individual actions of Plaintiff, as to which Plaintiff has personal knowledge.

## JURISDICTION AND VENUE

1.      This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the class are citizens of different states than Defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).

2.      This Court also has personal jurisdiction over Defendant because Defendant is authorized to do business, and currently does business, in this state.

3.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District and is subject to personal jurisdiction here, and a substantial portion of the conduct complained of herein occurred in this District.

## THE PARTIES

4.      Plaintiff Nathaniel Schwartz purchased Defendant's 2025LED-65K LED Bulb from online retailerAmazon.com.  Defendant represented this bulb as having a Lumen Count equal to 113 Lumens, however, Defendant's own expert, Lighting Sciences, Inc., confirmed that this bulb only produced 76 Lumens.

5.      Defendant Lights of America, Inc. ("LOA") is a California Corporation headquartered at 611 Reyes Drive, Walnut, California 91789.

6.      Plaintiff does not know the true names or capacities of the persons or entities sued herein as DOES 1 to 10, inclusive, and therefore sues such defendants

CLASS ACTION COMPLAINT

by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the DOE defendants is in some manner legally responsible for the damages suffered by Plaintiff and the members of the class as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## FACTUAL ALLEGATIONS

7.      Since at least February 2008, and continuing thereafter, LOA has advertised, marketed, promoted, distributed, offered for sale, and sold light emitting diode ("LED") lamps to retailers for sale to consumers. These LED lamps are screw light bulbs that can be used in households in place of incandescent bulbs. Properly manufactured LED lamps typically produce more light output (i.e., lumens, a measure of brightness) with less wattage (i.e., energy use) than traditional incandescent bulbs.

8.      LOA sold its LED lamps through retailers located throughout the United States and Canada, including Wal-Mart, Sam's Club, ACE Hardware, Costco, Kroger, as well as through other retail businesses. Consumers also could purchase LOA' LED lamps from the Internet websites of numerous retailers, such as Amazon.com, Sam's Club, and ACE Hardware.

9.      LOA advertised, marketed, promoted, distributed, offered for sale, and sold its LED lamps using claims: (1) comparing its LED lamps to incandescent watt bulbs; (2) identifying the light output in lumens of its LED lamps; and (3) stating that its LED lamps would last a specified number of hours.

10.     LOA represented that its LED lamps would provide light output equivalent to a particular watt incandescent bulb. For example, LOA claimed that its LED lamps use low wattage and either replace or are comparable to higher watt incandescent bulbs.

11.    Those representations included, but are not limited to, the following claims for the models listed below:

| | | |
|---|---|---|
| a. | 2001LED1O-65K | Replaces 25 watts, uses only 1 watt<br>Replaces 20 watts, uses only 1 watt |
| b. | 2001LED53IN-65K | Replaces 25 watts, uses only 1 watt<br>Replaces 20 watts, uses only 1 watt |
| c. | 2001LEDE53OUT-65K | Replaces 25 watts, uses only 1 watt<br>Replaces 20 watts, uses only 1 watt |
| d. | 2001LEDE26-65K | Replaces 25 watts, uses only 1 watt<br>Replaces 20 watts, uses only I watt |
| e. | 2002LEDP30-65K | Replaces 45 watts, uses only 3.5 watts |
| f. | 2002LEDR30-65K | Replaces 45 watts, uses only 3.5 watts |
| g. | 2003LEDP38-65K | Replaces 45 watts, uses only 5 watts |
| h. | 2004LEDDL-35K | Replaces 45 watts, uses only 3.5 watts<br>Replaces 40 watts, uses only 4 watts |
| i. | 2025LED-30K | Replaces 40 watts, uses only 1.5 watts |
| j. | 2025LED-65K | Replaces 40 watts, uses only 1.5 watts |
| k. | 2025LEDE12-30K | Replaces 40 watts, uses only 1.5 watts |
| l. | 2025LEDE12-65K | Replaces 40 watts, uses only 1.5 watts |
| m. | 2026LED-30K | Replaces 40 watts, uses only 1.5 watts |
| n. | 2026LED-65K | Replaces 40 watts, uses only 1.5 watts |

12.    The claims described above also appeared in product brochures disseminated to retailers throughout the United States. Those representations included, but are not limited to, the following claims for the models listed below:

4

| a. | 2001LED1O-65K | Wattage: 1W, Incandescent Camparison: 25W |
| | | Wattage: 1 W, Incandescent Camparison: 20W |
| b. | 2001LED53IN-65K | Wattage: 1 W, Incandescent Camparison: 25W |
| | | Wattage: 1W, Incandescent Camparison: 20W |
| c. | 2001LED53OUT-65K | Wattage: 1W, Incandescent Camparison: 25W |
| | | Wattage: 1W, Incandescent Camparison: 20W |
| d. | 2001LEDE26-65K | Wattage: 1W, Incandescent Camparison: 25W |
| | | Wattage: 1W, Incandescent Camparison: 20W |
| e. | 2002LEDP30-65K | Wattage: 3.5W, Incandescent Camparison: 45W |
| f. | 2002LEDR30-65K | Wattage: 3.5W, Incandescent Camparison: 45W |
| g. | 2003LEDP38-65K | Wattage: 5W, Incandescent Camparison: 45W |
| h. | 2004LEDDL-3 5K | Wattage: 3.5W, Incandescent Camparison: 45W |
| | | Wattage: 4W, Incandescent Camparison: 45W |
| i. | 2025LED-30K | Wattage: 1.5W, Incandescent Camparison: 40W |
| j. | 2025LED-65K | Wattage: 1.5W, Incandescent Camparison: 40W |
| k. | 2025LEDE12-30K | Wattage: 1.5W, Incandescent Camparison: 40W |
| l. | 2025LEDE12-65K | Wattage: 1.5 W, Incandescent Camparison: 40W |
| m. | 2026LED-30K | Wattage: 1.5W, Incandescent Camparison: 40W |
| n. | 2026LED-65K | Wattage: 1.5W, Incandescent Camparison: |

5

| | | 40W | |
|---|---|---|---|

13.     In addition to the "incandescent camparison [sic]" claims described above, LOA's product brochures included pictures of product packaging that indicated that its LED lamp "replaces" a much higher wattage incandescent bulb and "uses only" a much lower wattage than that bulb.

14.     A typical 20-watt incandescent bulb's light output is 150 lumens. A typical 25-watt incandescent bulb's light output is 200 lumens. A typical 40-watt incandescent bulb's light output is 450 lumens. A typical 45-watt incandescent bulb's light output is 510 lumens.

15.     LOA's own testing, as well as testing done by the Federal Department of Energy ("DOE"), however, demonstrated that LOA's LED lamps produced significantly less light output than a typical incandescent light bulb at the wattage represented in LOA's promotional materials.

### LOA's Testing Results

16.     LOA began selling its LED lamps as early as February 2008, but did not procure any testing for many, if not all, models until December 2008. LOA produced testing results from Lighting Sciences, Inc. ("LSI") for ten of the fourteen LED lamp models identified in Paragraphs 10-11 above, for which LOA made watt equivalency claims. LOA's testing for the ten LED models did not substantiate LOA's watt equivalency claims. In fact, the LSI testing results contradicted LOA's claims.

17.     The lumen output identified in the LSI testing results are below the light output for a typical incandescent watt bulb, to which LOA compared these models.

| | Model | Watt Equivalency Claim | Watt Light Output | Typical Testing Results/Date |
|---|---|---|---|---|

CLASS ACTION COMPLAINT

| | | | | (in lumens) | (in lumens) |
|---|---|---|---|---|---|
| a. | 2001LEDE26-65K | 20/25 Watts | 150/200 | 30.6 |
| b. | 2002LEDR30-65K | 45 Watts | 510 | 172 |
| c. | 2003LEDP38-65K | 45 Watts | 510 | 282 |
| d. | 2004LEDDL-35K | 40/45 Watts | 450/510 | 201/(3-26-2009) |
| e. | 2025LED-30K | 40 Watts | 450 | 41/(12-17-2008) |
| f. | 2025LED-65K | 40 Watts | 450 | 76/(12-17-2008) |
| g. | 2025LEDE 12-30K | 40 Watts | 450 | 76/(12-17-2008) |
| h. | 2025LEDE12-65K | 40 Watts | 450 | 74/(12-17-2008) |
| i. | 2026LED-30K | 40 Watts | 450 | 43/(12-17-2008) |
| j. | 2026LED-65K | 40 Watts | 450 | 84/(12-17-2008) |

18.    LOA did not have any testing that measured the lumen output of the following LED lamps:

a. 2001 LED 10-65K

b. 2001LED53IN-65K

c. 2001LEDE53OUT-65K

d. 2002LEDP30-65K

**CALIPER Testing**

19.    DOE conducted testing of several of LOA's LED lamps through its Commercially Available LED Product Evaluation and Reporting Program ("CALIPER"), an independent testing program that evaluates the performance of LED lamps. DOE purchases LED lamps from retail stores, conducts tests, shares the

results with the manufacturers and invites them to comment, makes the reports available to the public, and releases Summary Reports on its website. *See* http://www1.eere.energy.gov/buildings/ssl/caliper_faq.html.

20.    In August 2008 and in June 2009, DOE conducted CALIPER testing on six of LOA's LED lamp models. This testing showed that LOA's LED lamps produced less light output than the incandescent watt bulbs to which LOA's LED lamps were compared.

|  | Model | Watt Equivalency Claim | Watt Light Output (in lumens) | CALiPER Testing Date (in lumens) |
|---|---|---|---|---|
| a. | 2001LED53OUT-65k | 20/25 Watts | 150/200 | 26.8-29.9/ August 2008 |
| b. | 2003LEDP38-65K | 45 Watts | 510 | 122-177/ August 2008 |
| c. | 2004LEDDL-35K | 45 Watts | 510 | 140-143/August 2008 |
| d. | 2002LEDR30-65K | 45 Watts | 510 | 179-189/June 2009 |
| e. | 2003LEDP38-65K | 45 Watts | 510 | 268-302/June 2009 |
| f. | 2025LEDE12-30K | 40 Watts | 450 | 66-67/June 2009 |

21.    In September 2008, DOE published the Summary Report for the August 2008 testing round, which included the testing of LOA's LED lamps. In October 2009, DOE published the Summary Report for the June 2009 testing round,

CLASS ACTION COMPLAINT

which included testing of LOA's LED lamps. DOE distributed the September 2008 and October 2009 Summary Reports via a DOE email listserv that included LOA's Vice President of Sales and Marketing, Brian Halliwell, as well as other senior LOA employees.

22.     In summarizing the results from the 2008 round of testing that included LOA LED products and other manufacturers' products, DOE explained that "[i]n almost every case where product literature compares an SSL [LED] product to traditional products, the comparisons are highly overstated and misleading." *See* U.S. Dep't of Energy, CALIPER Summary Report, DOE Solid-State Lighting CALIPER Program, Summary of Results: Round 6 of Product Testing, at 20 (Sept. 2008).

23.     From February 2008 until at least August 2009, LOA made watt equivalency claims, including, but not limited to, those identified in Paragraphs 10-11 above, in its promotional materials for most, if not all, LOA LED lamps. LOA continued to make these claims even after receiving test results that contradicted its claims.

24.     For at least ten months after receiving the 2008 CALIPER test results from DOE, LOA made claims that its LED lamps used low wattage, but replaced significantly higher wattage incandescent bulbs, including but not limited to the claims identified in Paragraph 16, on most, if not all, of its product packaging.

25.     As recently as December 8, 2010, models 2002LEDR30-65K, 2003LEDP38-65K, and 2025LEDE12-30K were being sold on the Internet at Amazon.com, with incandescent bulb watt equivalency claims like those in Paragraphs 10-11 above.  In October 2010, models 2003LEDP38-65K, 2004LEDDL, and 2026LEDE26-30K were being sold on the Internet at Sam's Club with incandescent bulb watt equivalency claims like those in Paragraphs 10-11 above.

CLASS ACTION COMPLAINT

26.     LOA received consumer complaints about the light output of numerous LOA LED lamp models. Those complaints included, but are not limited to, complaints about the light output of the following models: 2002LEDR30-65K, 2003LEDP38-65K, 2004LEDDL, 2025LEDE12-30K, and 2026LEDE26-30K. Each of these models had sales at least from February 2008 through August 2009. Each of these models continued to be sold after August 2009.

**Light Output**

27.     In numerous instances, LOA represented that its LED lamps provided a specific level of light output in lumens. Those representations appeared on product packaging and included, but are not limited to, the following claims for the models listed below:

| a. | 2025LED-30K | Light Output: 88 lumens |
|---|---|---|
| b. | 2025LED-65K | Light Output: 113 lumens |
| c. | 2025LEDE12-65K | Light Output: 113 lumens |
| d. | 2026LED-30K | Light Output: 81 and 90 lumens |
| e. | 2004LEDDL-35K | Light Output: 201 lumens |
| f. | 2025LEDE12-30K | Light Output: 76 lumens and 90 lumens |

28.     LOA's LED lamps produced significantly less lumens than LOA represented on its product packaging.

29.     LOA's own testing, from LSI, did not support LOA's representations regarding its LED lamps' lumens.

| | Model | Lumen Claim | LSI Testing Results (in lumens) |
|---|---|---|---|
| a. | 2025LED-30K | 86 | 41 |
| b. | 2025LED-65K | 113 | 76 |

| | | | |
|---|---|---|---|
| c. | 2025LEDE 12-65K | 113 | 74 |
| d. | 2026LED-30K | 81 and 90 | 43 |

30.    In August 2008 and in June 2009, DOE conducted CALIPER testing on several of LOA's LED lamp models. This testing showed that LOA's lumen output representations, as detailed in Paragraph 28 (e) & (f), were false and unsubstantiated.

| | Model | Lumen Claim | CALIPER Testing (in lumens) |
|---|---|---|---|
| e. | 2004LEDDL-35K | 201 | 140 and 143 |
| f. | 2025LEDE12-30K | 76 and 90 | 66-67 |

31.    LOA made lumen representations in its promotional materials for LED lamps from July 2009 to the present.

**Lifetime Claims**

32.    In numerous instances, LOA represented that its LED lamps would last tens of thousands of hours, usually providing a specific number of hours.

33.    These lifetime claims appeared on product packaging for all LED models LOA sold between February 2008 through August 2009, and for numerous models sold after August 2009. The representations included, but are not limited to, the following claims for the models listed below:

| | | |
|---|---|---|
| a. | 2001LED53OUT-65K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again." |
| b. | 2001LEDE26-65K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again."*** Rated Life: 20,000 hours; LASTS 10 TIMES |

CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | | LONGER [graphic: picture of a large LED light bulb equal to 10 small incandescent light bulbs] than 3,000 hour incandescent bulbs. |
| 4<br>5<br>6<br>7<br>8<br>9 | c. | 2002LEDP30-65K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again." Rated Life: 20,000 hours; LASTS 10 TIMES LONGER [graphic: picture of a large LED light bulb equal to 10 small incandescent light bulbs] than 2,000 hr incandescent bulbs. |
| 10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19 | d. | 2002LEDR30-65K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again." 30,000 Hour Life (Life rating of LED's); LASTS 15 TIMES LONGER [graphic: picture of a large LED light bulb equal to 15 small incandescent light bulbs] than 2,000 hour incandescent bulbs. Rated Life: 20,000 hours; LASTS 10 TIMES LONGER [graphic: picture of a large LED light bulb equal to 10 small incandescent light bulbs] than 2,000 hr incandescent bulbs. |
| 20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | e. | 2003LEDP38-65K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again."*** LASTS 10 TIMES LONGER [graphic: picture of a large LED light bulb equal to 10 small incandescent light bulbs] than 3,000 hour incandescent bulbs Rated Life: 20,000 hours; LASTS 10 TIMES LONGER [graphic: picture of a large LED light bulb equal to 10 small incandescent light bulbs] than 2,000 hour |

CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| 1 | | | incandescent bulbs. |
| 2 | f. | 2004LEDDL-35K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again."*** Rated Life: 30,000 Hours; LASTS 20 TIMES LONGER [graphic: picture of a large LED light bulb equal to 20 small incandescent light bulbs] than 1,500 hour incandescent bulbs. Rated Life: 20,000 hours; LASTS 10 TIMES LONGER [graphic: picture of a large LED light bulb equal to 10 small incandescent light bulbs] than 2,000 hour incandescent bulbs |
| 12 | g. | 2025LED-30K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again."*** Rated Life: 30,000 hours; LASTS 15 TIMES LONGER [graphic: picture of a LED light bulb equal to 15 small incandescent light bulbs] than 2,000 hour incandescent bulbs. |
| 18 | h. | 2025LED-65K | 20,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again."*** Rated Life: 20,000 hours; LASTS 10 TIMES LONGER [graphic: picture of a LED light bulb equal to 10 small incandescent light bulbs] than 2,000 hour incandescent bulbs |
| 24 | i. | 2025LEDE12-30K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again."*** Rated Life: 30,000 hours; LASTS 15 TIMES LONGER [graphic: picture of a LED light bulb equal to 15 small incandescent light bulbs] than |

| | | | |
|---|---|---|---|
| | | | 2,000 hour incandescent bulbs. Rated Life: 20,000 hours; LASTS 10 TIMES LONGER [graphic: picture of a LED light bulb equal to 10 small incandescent light bulbs] than 2,000 hour incandescent bulbs. |
| | j. | 2025LEDE12-65K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again."*** Rated Life: 30,000 hours; LASTS 15 TIMES LONGER [graphic: picture of a LED light bulb equal to 15 small incandescent light bulbs] than 2,000 hour incandescent bulbs. |
| | k. | 2025TLEDE12-30K | Rated Life: 20,000 hours; LASTS 10 TIMES LONGER [graphic: picture of a LED light bulb equal to 10 small incandescent light bulbs] than 2,000 hour incandescent bulbs. |
| | l. | 2026LED-30K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again."*** Rated Life: 30,000 hours; LASTS 15 TIMES LONGER [graphic: picture of a LED light bulb equal to 15 small incandescent light bulbs] than 2,000 hour incandescent bulbs |
| | m. | 2026LED-65K | 30,000 Hour Life (Life rating of LED's); "You'll never change your bulbs again."*** Rated Life: 30,000 hours; LASTS 10 TIMES LONGER [graphic: picture of a LED light bulb equal to 10 small incandescent light bulbs] than 3,000 hour incandescent bulbs. |
| | n. | 2035LED-30K | Rated Life: 20,000 hours; LASTS 10 TIMES |

1
2
3
4
5
6
7

| | | LONGER [graphic: picture of a LED light bulb equal to 10 small incandescent light bulbs] than 2,000 hour incandescent bulbs. [The asteriks in the above quotations refer to the following sentence appearing on the packaging.] ***Statement based on the minimum # of times the led [sic] bulb needs to be changed. |
|---|---|---|

8

9   34.   Representations regarding lifetime claims also appeared in LOA's

10 product brochures. These representations included, but are not limited to, the

11 lifetime claims for the models listed below:

| a. | 2001LED 10-65K | BULB LIFE HOURS: 30,000 |
|---|---|---|
| b. | 2001LED53IN-65K | BULB LIFE HOURS: 30,000 |
| c. | 2001LED53OUT-65K | BULB LIFE HOURS: 30,000 |
| d. | 2001LEDE26-65K | BULB LIFE HOURS: 30,000 |
| e. | 2002LEDP30-65K | BULB LIFE HOURS: 30,000 |
| f. | 2002LEDR30-65K | BULB LIFE HOURS: 30,000 |
| g. | 2003LEDP38-65K | BULB LIFE HOURS: 30,000 |
| h. | 2004LEDDL-35K | BULB LIFE HOURS: 30,000 |
| i. | 2025LED-30K | BULB LIFE HOURS: 30,000 |
| j. | 2025LED-65K | BULB LIFE HOURS: 30,000 |
| k. | 2025LEDE12-30K | BULB LIFE HOURS: 30,000 |
| l. | 2025LEDE12-65K | BULB LIFE HOURS: 30,000 |
| m. | 2026LED-30K | BULB LIFE HOURS: 30,000 |
| n. | 2026LED-65K | BULB LIFE HOURS: 30,000 |

26

27   35.   LOA did not test any of its individual LED lamp models to support its

28

15

lifetime claims.

36.    In 2009, DOE's CALIPER program conducted testing to evaluate the lifetime claims for LOA' models 2002LEDR30-65K, 2003LEDP38-65K, and 2025LEDE12-30K by testing six samples of each model. DOE sent these results to LOA on September 22, 2009.

37.    LED lamps do not fail in the same manner as incandescent bulbs. LED lamp light output decreases over time, and LED lamp lifetime is defined by how long it provides an acceptable light output. LED lamp life is defined by the operating time for the LED lamp to reach two performance criteria, L70 and L50. *See* Alliance for Solid-State Illumination Systems and Technologies ("ASSIST"), Lighting Research Center, Rensselaer Polytechnic Institute, *LED Life for General Lighting: Life Definition*, Vol. 1, Issue 1, at 4 (2005). In most cases, industry practice measures general lighting products' LED lamp lifetime by calculating the number of hours before the LED lamp light output depreciates by 30 percent. This is generally referred to as the L70 measurement, i.e., the number of hours of operation until the light output reaches 70 percent of initial light output.

38.    In some cases, industry practice measures lighting products' LED lamp lifetime by calculating the number of hours before the LED lamp light output depreciates by 50 percent. This is generally referred to as the L50 measurement, i.e., the number of hours of operation until the light output reaches 50 percent of initial light output.

39.    The actual number of lifetime hours for LOA's CALIPER-tested LED lamps using the L70 lumen depreciation measurement were as follows:

|     | Model | Lifetime Claim (in hours) | CALIPER-Tested L70 Lifetime (in hours) |
| --- | --- | --- | --- |
| a.  | 2002LEDR30-65K | 30,000 | 380 |

---

16

CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| b. | 2003LEDP38-65K | 30,000 | 270 |
| c. | 2025LEDE12-30K | 30,000 | 110 |

40.    The actual number of lifetime hours for LOA's CALIPER-tested LED lamps using the L50 lumen depreciation measurement were as follows:

| | Model | Lifetime Claim (in hours) | CALiPER Tested L50 Lifetime (in hours) |
|---|---|---|---|
| a. | 2002LEDR30-65K | 30,000 | 600 |
| b. | 2003LEDP38-65K | 30,000 | 435 |
| c. | 2025LEDE12-30K | 30,000 | 230 |

41.    The results in Paragraphs 41 and 42 above demonstrate the falsity of LOA's lifetime claims under either the L70 or L50 measurement.  The 2009 DOE CALIPER testing contained the following conclusions for various LOA LED models:

   a. 2002LEDR30-65K's light output depreciated approximately 70 percent from its initial light output after 1,000 hours;

   b. 2003LEDP38-65K's light output depreciated approximately 78 percent from its initial light output after 1,000 hours; and

   c. 2025LEDE12-30K's light output depreciated approximately 90 percent from its initial light output after 1,000 hours.

42.    DOE characterized the light output depreciation identified in Paragraphs 41, 42, and 43 above as "exceedingly poor long-term performance," and that the results do "not appear typical across products on the market." *See* U.S. Dep't of Energy, GALIPER Summary Report, DOE Solid-State Lighting CALIPER Program, Summary of Results: Round 9 of Product Testing, at 28 (Oct. 2009).

43.     DOE further noted that out of the fifteen LED lamp products tested to date, which included three LOA lamps and twelve from other manufacturers, LOA's lamps "are the only products which have exhibited light output falling below 95% of initial light output within the first 1000 hours." *Id.*

44.     LOA received numerous consumer complaints about the lifetime of many of its LED lamp models. Those complaints included, but are not limited to, complaints about the lifetime of the following models: 2002LEDR30-65K, 2003LEDP38-65K, 2004LEDDL, 2025LEDE12-30K, and 2026LEDE26-30K.

45.     In October 2009, LOA agreed to provide refunds to Costco customers who had purchased certain LED lamp models. In a letter sent to consumers at that time, LOA stated that it was providing refunds because of test results "indicating that the life rating on the package is incorrect and that the actual life of the product is less than that which is stated on the package."

46.     Each of the models identified above continued to be sold after August 2009. Eleven months later, in August 2010, models 2002LEDR30-65K, 2003LEDP38-65K, 2004LEDDL, and 2025LEDE12-30K, were being sold on the Internet at Amazon.com, with representations that they lasted 30,000 hours. Fourteen months later, in October 2010, models 2003LEDP38-65K, 2004LEDDL, and 2026LEDE26-30K were being sold on the Internet at Sam's Club, with representations that they lasted 30,000 hours.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff will seek certification of a class or classes under Federal Rule of Civil Procedure 23.
Procedure 23.

48.     Plaintiff's claims are brought on behalf of a class consisting of all persons in the United States who purchased any of LOA'S LED products, within the statutory limitations periods applicable to the herein-alleged causes of action (including, without limitation, the period following the filing of this action).

Defendant's representations and omissions were material and resulted in damage to each and every member of the class, as alleged above.

49.    The exact number of members of the class is not known, but given published reports as to LOA's sales, which are in the hundreds of millions of dollars, it is reasonable to presume that the class is so numerous that joinder of individual members is impracticable.

50.    There are common questions of law and fact in the action that relate to and affect the rights of each member of the class, namely, whether the false, misleading, unfair, and unlawful activities ascribed to Defendant's marketing campaign, as alleged above, are actionable under applicable legal theories.

51.    The relief sought is common to the class.  For example, Plaintiff and each affected class member will be entitled, under the Unfair Competition Law, to, among other things, restitution of money that Defendant wrongfully acquired from them through its practices, and to potential damages under other causes of action.

52.    The claims of Plaintiff, who is a representative of the class, are typical of the claims of the class.  The claims of all members depend upon a showing of the acts and omissions of Defendant described herein, giving rise to the right of Plaintiff to the relief sought.

53.    There is no conflict between Plaintiff and other members of the class with respect to this action, or with respect to the claims for relief as set forth herein.

54.    Plaintiff is the representative party for the class.  Plaintiff is able to and will fairly and adequately protect the interests of the class.  Counsel for Plaintiff are experienced and capable in the field of consumer protection litigation.  They have successfully prosecuted claims in other, similar litigation.

55.    Certification of the class is appropriate under applicable law.  The questions of law and fact common to the members of the class predominate over any questions affecting only individual members.  A class action is superior to other

19

available methods for the fair and efficient adjudication of the controversy, and will create a substantial benefit to both the public and the courts because:

- the costs of prosecuting the action individually will vastly exceed the costs for prosecuting the case as a class action;

- class certification will obviate the necessity of a multiplicity of claims;

- it is desirable to concentrate the litigation of these claims in this forum; and

- unification of common questions of fact and law in a single proceeding before this Court will reduce the likelihood of inconsistent rulings, opinions, and decisions.

56.    A class action is a superior means of fairly and efficiently resolving this dispute.  Members of the class almost invariably lack the means to pay attorneys to prosecute their claims individually.  Given the complexity of the issues presented here, individual claims are not sufficiently sizeable to attract the interest of highly able and dedicated attorneys who will prosecute them on a contingency basis.  A class action is therefore essential to prevent a failure of justice.

57.    Notice to the putative class may be accomplished through publication, records maintained by store rewards card programs, records maintained by Defendant, signs or placards at points-of-sale, or other forms of distribution, if necessary.

## **FIRST CAUSE OF ACTION**
### ***Business and Professions Code§ 17500***
### **(Violation of the False Advertising Act)**

58.    Plaintiff hereby incorporates, as if set forth fully herein, each and every preceding and subsequent allegation in this complaintfull, paragraphs 1 – 57, above.

59.    *Business and Professions Code* § 17500 provides that "[i]t is unlawful for any ... corporation ... with intent ... to dispose of ... personal property ... to induce

the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

60.     Defendant misleads consumers by making untrue statements and failing to disclose what is required, as stated in the Code and as alleged above.

61.     As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the members of the Class have suffered injury in fact and have lost money or property.

62.     The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class, in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendant's conduct will continue to cause irreparable injury to Plaintiff and the Class unless enjoined or restrained.

### SECOND CAUSE OF ACTION

### Business and Professions Code § 17200, *et seq.*

### (Violation of the Unfair Competition Law)

63.     Plaintiff hereby incorporates, as if set forth fully herein, each and every preceding and subsequent allegation in this complaintfull, paragraphs 1 – 57, above.

64.     California Business and Professions Code § 17200, *et seq.* (the "Unfair Competition Law" or "UCL") authorizes private lawsuits to enjoin acts of "unfair competition," which includes any unlawful, unfair, or fraudulent business practice.

65.     The UCL imposes strict liability.  Plaintiffs need not prove defendant intentionally or negligently engaged in unlawful, unfair or fraudulent business practices—but only that such practices occurred.

66.     The material misrepresentations, concealments, and non-disclosures by LOA, as part of the marketing of its LED products, are unlawful, unfair, and fraudulent business practices that are prohibited by the UCL.

67.     In carrying out such marketing, Defendant has violated the Consumer Legal Remedies Act, the False Advertising Law, and various other laws, regulations, statutes, and/or common law duties.   Defendant's business practices alleged herein, therefore, are unlawful within the meaning of the UCL.

68.     The harm to Plaintiff and other members of the class outweighs the utility of Defendant's practices and, consequently, Defendant's practices, as set forth fully above, constitute an unfair business act or practice within the meaning of the UCL.

69.     Defendant's practices are additionally unfair because they have caused Plaintiff and other members of the class substantial injury, which is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could have reasonably avoided.

70.     Defendant's practices, as set forth above, have misled the general public in the past and will mislead the general public in the future.   Consequently, Defendant's practices constitute an unfair business practice within the meaning of the UCL.

71.     Pursuant to Cal. Bus. & Prof. Code § 17204, an action for unfair competition may be brought by any "person . . . who has suffered injury in fact and has lost money or property as a result of such unfair competition."   Defendant's wrongful misrepresentations and omissions have directly and seriously injured Plaintiff and other members of the class by causing them to purchase LOA products based upon false and misleading claims.

72.     The unlawful, unfair, and fraudulent business practices of Defendant are ongoing and present a continuing threat that members of the public will be misled into purchasing LOA's LED products.

CLASS ACTION COMPLAINT

73.     Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease this unfair competition, as well as disgorgement and restitution to Plaintiff and the class of all of Defendant's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

### THIRD CAUSE OF ACTION

### Civil Code § 1770, *et seq.*

### (Violation of the Consumer Legal Remedies Act)

74.     Plaintiff hereby incorporates, as if set forth fully herein, each and every preceding and subsequent allegation in this complaintfull, paragraphs 1 – 57, above.

75.     The Consumer Legal Remedies Act ("CLRA") creates a non-exclusive statutory remedy for unfair methods of competition and unfair or deceptive acts or business practices.  *See Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1164 (1997).  Its self-declared purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection.  Cal. Civil Code §1760.  The CLRA was designed to be liberally construed and applied in favor of consumers to promote its underlying purposes.  *Id.*

76.     Plaintiff alleges that Defendant has violated paragraphs 5, 7, 9 and 19 of Cal. Civ. Code § 1770(a) by engaging in the unfair and/or deceptive acts and practices set forth herein.  Defendant's unfair and deceptive business practices in carrying out the marketing program described above are intended to, did, and do result in the purchase of Defendant's products by consumers, including Plaintiff, in violation of the CLRA.  Cal. Civil Code § 1770, *et seq.*

77.     As a result of Defendant's unfair and/or deceptive business practices, Plaintiff and other members of the class have suffered damage and lost money in that they paid for products that did not have the benefits as represented.  Plaintiff

seeks and is entitled to an order enjoining Defendant from continuing to engage in the unfair and deceptive business practices alleged herein.

78.    Pursuant to Section 1782 of the CLRA, Plaintiff intends to notify Defendant in writing of the particular violations of Section 1770 of the CLRA (the "Notice Letter").  If  Defendant fails to comply with Plaintiff's demands within thirty days of receipt of the Notice Letter, pursuant to Section 1782 of the CLRA, Plaintiff will amend this Complaint to further request damages under the CLRA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment as follows:

1.    For preliminary and permanent injunctive relief enjoining LOA, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unfair, unlawful and/or fraudulent business practices alleged above, and any business practices that may yet be discovered in the prosecution of this action;

2.    For certification of the putative class;

3.    For restitution and disgorgement of all money or property wrongfully obtained by LOA by means of its herein-alleged unlawful, unfair, and fraudulent business practices;

4.    For an accounting by Defendant for any and all profits derived by Defendant from its herein-alleged unlawful, unfair, and/or fraudulent conduct and/or business practices;

5.    For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, Code of Civil Procedure §1021.5, the CLRA, and the common law private attorney general doctrine;

6.    For costs of suit; and

7.    For such other and further relief as the Court deems just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action so triable.

Date: February 25, 2011                          Respectfully submitted,


**KIRTLAND & PACKARD LLP**
Michael Louis Kelly
Behram V. Parekh
Heather M. Peterson

By:   _____

Behram V. Parekh, of counsel
2361 Rosecrans Ave., Fourth Floor
El Segundo, CA 90245
Tel: 310-536-1000
Fax: 310-536-1001

Of Counsel:

**HARKE & CLASBY LLP**
Lance A. Harke
lharke@harkeclasby.com
Howard M. Bushman
hbushman@harkeclasby.com
9699 NE 2nd Avenue
Miami Shores, Florida 33138
Telephone:  (305) 536-8220
Telecopier:  (305) 536-8229

**KOZYAK,TROPIN,&
THROCKMORTON, P.A.**
Adam M. Moskowitz
amm@kttlaw.com
Thomas A. Tucker Ronzetti
tr@kttlaw.com
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: (305) 372-1800
Telecopier: (305) 372-3508

**BARNOW AND ASSOC., P.C.**
Ben Barnow, Esq.
b.barnow@barnowlaw.com
Blake A. Strautins, Esq.
b.strautins@barnowlaw.com
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Telecopier: (312) 641-5504

*Counsel for Plaintiff and all others
similarly situated*

26

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George King and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV11- 1712 GHK (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

NATHANIEL SCHWARTZ, on behalf of
himself and all others similarly
situated

PLAINTIFF(S)

v.

LIGHTS OF AMERICA, INC., a California
Corporation, and DOES 1-10

DEFENDANT(S).

CASE NUMBER

CV11-01712 GHK (JCGx)

**SUMMONS**

TO:   DEFENDANT(S): LIGHTS OF AMERICA, INC.

A lawsuit has been filed against you.

Within 21_____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [x] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Michael Louis Kelly_____ , whose address is Kirtland & Packard LLP, 2361 Rosecrans Ave, 4th Fl, El Segundo, CA 90245 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   FEB 2 5 2011

By: _____
     Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                           SUMMONS                                              CCD-1A

COPY

BY FAX

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐ ) | DEFENDANTS |
|---|---|
| NATHANIEL SCHWARTZ, on behalf of himself and all others similarly situated | LIGHTS OF AMERICA, INC., a California Corporation, and DOES 1-10 |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Behram V. Parekh<br>Kirtland & Packard LLP<br>2361 Rosecrans Avenue, Fourth Floor<br><br>El Segundo, CA 90245<br>(310) 536-1000 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Jurisdictional Statute - Class Action Fairness Act, 28 USC Section 1332(d)(2)(A)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☒ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS - Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: ___CV11-01712___

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)     CIVIL COVER SHEET     Page 1 of 2
CCD-JS44

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [x] No [ ] Yes

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [ ] No [x] Yes

If yes, list case number(s): 8:10-CV-01333-JVS-MLG

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)
[x] A. Arise from the same or closely related transactions, happenings, or events; or
[x] B. Call for determination of the same or substantially related or similar questions of law and fact; or
[x] C. For other reasons would entail substantial duplication of labor if heard by different judges; or
[ ] D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Florida |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
[ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles - All Claims | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _[signature]_   Date February 25, 2011
Behram V. Parekh

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |